IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD L. BRICKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 08-1053 |
| v. ) | |
| ) | Judge David S. Cercone |
| CAPT. GEORGE A. KUZILLA, ) | Magistrate Judge Lisa Pupo Lenihan |
| Pennsylvania State Police Troop D; ) | |
| RANDALL PEEVEY, Inmate; THOMAS ) | |
| MILLIRON, Inmate, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

For the reasons stated below, it is respectfully recommended that Plaintiff's claims against Defendants Peevey and Milliron be dismissed *sua sponte*. It is further recommended that Defendant Peevey's motion for summary judgment, Doc. No. 73, be denied as moot.

**II. REPORT**

Plaintiff Ronald L. Bricker ("Plaintiff"), an inmate incarcerated at the State Correctional Institution at Houtzdale, Pennsylvania ("SCI-Houtzdale"), brings this suit *pro se* under the Civil Rights Act of 1871, 42 U.S.C. § 1983. Named as defendants are two current and/or former inmates[1] of the State Correctional Institution at Mercer, Pennsylvania ("SCI-

---

[1] A search of the DOC's website indicates that Defendant Peevey is still incarcerated at SCI-Mercer. The website returned no results for Defendant Milliron. See http://www.cor.state.pa.us/ (last viewed on Oct. 6, 2009). The Record reflects that Defendant
(continued...)

Mercer"), and a Captain of the Pennsylvania State Police.[2] Plaintiff was granted leave to proceed *in forma pauperis* ("IFP") on September 11, 2008. See Doc. No. 7. Plaintiff alleges various violations of his rights under the United States Constitution stemming from a conflict over a locker that took place on or about February 28, 2008, while he was incarcerated at SCI-Mercer. See, generally, Compl. (Doc. No. 8).[3] Defendant Peevey filed a "Motion to Dismiss," which this Court has treated as an answer to Plaintiff's amended complaint, on December 22, 2008. See Doc. No. 31. Defendant Peevey filed a motion for summary judgment on July 18, 2009. See Doc. No. 73. In this motion, Defendant Peevey makes no legal argument, but instead disputes Plaintiff's factual allegations against him. Doc. No. 73 at 1. The Record indicates that Defendant Milliron has not filed a response to Plaintiff's complaint.

---

[1](...continued)
Milliron's last known address was SCI-Mercer. See Def. Milliron's Waiver of Service (Doc. No. 21). The docket does not indicate that any change of address was filed by Defendant Milliron.

[2] Dismissal was previously granted for several defendants originally named in this suit. Those defendants have been terminated. See Mem. Order (Doc. No. 84).

[3] Plaintiff filed a motion to amend his complaint on December 9, 2008. See Doc. No. 29. This document was construed by this Court to be an amendment to Plaintiff's original complaint, which alleged new facts and named four new defendants. In its order allowing Plaintiff's amendment, this Court instructed all defendants that they must respond to the original complaint (Doc. No. 8) as well as to these amendments. See Text Order Granting Mot. to Amend/Correct. Plaintiff was advised that he was required to provide service copies, waiver forms and Marshall 285 forms to the Court, in order for the additional defendants to be served. Id. However, the Docket does not reflect this Court having ever received these documents, or that the additional defendants were ever served. Plaintiff was ordered to show cause by October 14, 2009, why his claims against these new defendants should not be dismissed for failure to prosecute. See Show Cause Order (Doc. No. 82). As that deadline has not yet passed, the claims against the additional defendants named in the amendment to the complaint are not addressed in this Report and Recommendation.

A. Relevant Factual History

A summary of the relevant portions of Plaintiff's recitation of facts is as follows. On or about February 28, 2008, a new locker became available on Plaintiff's cellblock. See Doc. No. 8 at ¶ 13. Plaintiff asked the Corrections Officer on duty, former Defendant Wood, if he could have the new locker.[4] Id. Former Defendant Wood granted Plaintiff's request. After Plaintiff and another inmate placed the locker inside Plaintiff's "cubit," Defendant Peevey convinced former Defendant Wood that the locker was actually meant for him. Id. at ¶ 14. Defendant Peevey, with former Defendant Wood's consent, then took possession of the locker. Id. Defendant Peevey later gave the disputed locker to Defendant Milliron. Id. After Defendant Milliron, who was working at the time of the incident, returned to the cellblock, he was informed of the situation involving the locker by Defendant Peevey. Id. at ¶ 15. Defendant Milliron then confronted Plaintiff, threatening him and warning him not to remove things from Defendant Milliron's "cubit".[5] Id.

A day later, on February 29, 2008, at about 9:30 pm, Plaintiff was drinking a cup of coffee that "tasted bad," and made him ill for a week. Id. at ¶ 16. The following morning, Plaintiff was informed by "inmate Ford" that Defendant Peevey had put a chemical in Plaintiff's coffee, and that Defendant Milliron was involved with the commission of that act as well. Id.

---

[4] All claims against former Defendant Wood were dismissed on September 30, 2009. See Doc. No. 84.

[5] It is unclear from the complaint what, if anything, was removed from Defendant Milliron's "cubit". For the sake of coherence, this Court interprets the statements made in Paragraph 15 of the complaint, Doc. No. 8, to mean that the Plaintiff had initially removed the new locker from Defendant Milliron's possession. However, the reason for Defendant Milliron's dispute with Plaintiff, and the alleged threat and assault that followed, are ultimately irrelevant to this Court's decision.

Plaintiff states in his complaint that, on March 1, 2008, at around 9:30 am, he informed the Corrections Officer on duty, former Defendant Exley, of the chemical in his coffee, and that former Defendant Exley began an investigation.[6]  Id. at ¶ 18.  The following day, March 2, 2008, Defendant Peevey was removed from Plaintiff's cellblock, but Defendant Milliron was allowed to remain.  Id.  Plaintiff alleges that Defendant Milliron was allowed to stay in order to cause him "more trouble."  Id.

Plaintiff states that he filed a criminal complaint with respect to the incident, which was turned over to Defendant Kuzilla, who is a Captain in the Pennsylvania State Police.  Id. at ¶ 19.  Plaintiff accuses Defendant Kuzilla of unlawfully turning his investigation over to the DOC "Office of Professional Responsibility" and, in the process, of violating Plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution.  See id. at ¶¶ 19-20.

On July 29, 2008, Plaintiff first attempted to file this lawsuit IFP.  Leave to proceed IFP was initially denied by this Court because Plaintiff's filing did not include the necessary affidavit and certified statement regarding his prisoner trust account in order to comply with the Prisoner Litigation Reform Act of 1996 ("PLRA").  See 28 U.S.C. § 1915(a)(1)-(2); see also Order Denying Mot. to Proceed IFP (Doc. No. 2).  Plaintiff submitted the necessary documentation, and this suit commenced on September 11, 2008.  See Doc. No. 8.

B.  Standard of Review

In his motion for summary judgment, Defendant Peevey makes no legal argument as to

---

[6]All claims against former Defendant Exley were dismissed on September 30, 2009.  See Doc. No. 84.

why this Court should grant judgment in his favor.  See Doc. No. 73 at 1.  Instead, Defendant Peevey disputes Plaintiff's allegations that he put anything in Plaintiff's coffee.  See Answer (Doc. No. 31).  Indeed, Defendant Peevey disputes the very existence of the cup of coffee that is central to Plaintiff's claims against him.  Id.  Ordinarily, a motion for summary judgment that disputes facts material to the case would have to be denied under Rule 56(c) of the Federal Rules of Civil Procedure.  However, this Court need not address the merits of Defendant Peevey's motion.  Instead, because Plaintiff proceeds in this suit *in forma pauperis*, pursuant to 28 U.S.C. § 1915, this Court must first analyze Plaintiff's complaint under 28 U.S.C. § 1915(e), in order to determine whether the allegations made by Plaintiff are legally sufficient to support a cause of action under 42 U.S.C. § 1983.

Title 28 of the United States Code, section 1915, establishes the criteria for allowing an action to proceed IFP, *i.e* ., without prepayment of costs.  Section 1915(e) (as amended) requires the federal courts to review complaints filed by persons that are proceeding *in forma pauperis* and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).  Thus, a court must dismiss, *sua sponte*, a complaint that lacks arguable merit in fact or law.  Stackhouse v. Crocker, 266 Fed.Appx. 189, 190 (3d Cir. 2008) (citing Neitzke v. Williams, 490 U.S. 319, 325 (1989)).  The standard for reviewing a complaint under this section 1915(e)(2)(B) is the same as that for determining a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Banks v. Mozingo, No. 1:08cv004, 2009 WL 497572, at * 6 (W.D.Pa. Feb. 26, 2009).

The Supreme Court of the United States has held that, when determining whether a

plaintiff has properly stated a claim upon which relief can be granted, a court must dismiss a complaint that does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This is not to say that the Supreme Court requires "heightened fact pleading of specifics . . ." Id. at 570.  However, the "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.  The Court has made it clear that the requirement that pleadings must be facially plausible, as expressed in Twombley, applies to all civil suits in the federal courts.  See Ashcroft v. Iqbal, 129 S.Ct. 1937 (May 18, 2009).

      A court must accept as true all allegations of the complaint, and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff.  See Angelastro v. Prudential-Bache Sec, Inc., 764 F.2d 939, 944 (3d Cir. 1985).  However, a court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004).  Nor must a court accept legal conclusions set forth as factual allegations.  See Twombly, 550 U.S. at 555.  Furthermore, it is improper for a court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  A plaintiff's claims must support a cause of action as a matter of law: claims that do not must be dismissed under Rule 12(b)(6).  Cf. Neitzke, 490 U.S. at 326-27.

      The United States Court of Appeals for the Third Circuit has recently held that, when determining whether to dismiss a complaint for failing to state a claim upon which relief can be

granted, a district court should apply a two-part test in order to determine whether a pleading's recitation of facts is sufficient.  See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009). "First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11 (citing Iqbal, 129 S.Ct. at 1949).  "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  Fowler, 578 F.3d at 211 (quoting Iqbal, 129 S.Ct. at 1950).

Additionally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).  In a section 1983 action, the court must liberally construe a *pro se* litigant's pleadings and 'apply applicable law, irrespective of whether a *pro se* litigant has mentioned it by name.'  Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d. Cir. 1999)).  "Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution."  Higgins, 293 F.3d at 688 (quoting Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)).

Finally, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).  This was originally a reaction to the rule requiring heightened factual pleading in civil rights cases.  See id. (citing Darr v. Wolfe,

767 F.2d 79, 80-81 (3d Cir. 1985) (requiring district court to exercise their discretion to allow *pro se* plaintiffs to amend their claims to avoid dismissal)); see also Dist. Council 47 v. Bradley, 795 F.2d 310, 316 (3d Cir. 1986) (extending the *pro se* amendment rule to counseled complaints).  This rule remains, and has been periodically affirmed, even after the Supreme Court's 1993 decision in Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993), which abrogated the heightened pleading rule in civil rights cases.  See Fletcher-Harlee Corp., 482 F.3d at 252 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)).

C. Analysis

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements: 1) the alleged misconduct must have been committed by a person acting under color of state law; and 2) the defendants' conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

Acting "under the color of state law" requires that "the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State." Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982).   For this to occur, "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible."  Id.  Additionally, "the party charged with the deprivation must be a person who may fairly be said to be a state actor."  Id.  An

individual may be determined to be a state actor if he or she is a state official, has acted together with or obtained significant aid from state officials, or has performed conduct otherwise chargeable to the state.  Id.

The United States Supreme Court has articulated several instances in which the actions of an otherwise private party may be attributed to the state.  Examples of these include: when the activity results from the state's exercise of coercive power; when the state provides significant overt or covert encouragement; or when a private actor operates as a willful participant in a joint activity with the state or its agents.  Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, 531 U.S. 288, 296 (2001) (internal quotes and citations omitted).  The Supreme Court has held a nominally private entity to be a state actor when it is controlled by an agency of the state, when it has been delegated a public function by the state, when the entity is entwined with governmental policies, or when the government is entwined in and entity's management or control.  Id. (internal quotations and citation omitted).

Furthermore, the Supreme Court has recognized that, when determining whether an action or course of conduct is governmental in nature, it is proper to consider the extent to which the actor relies on governmental assistance or benefits, whether the actor is performing a traditional governmental function, and whether the injury caused by the actor is "aggravated in a unique way by the incidents of governmental authority."  Edmonson v. Leesville Concrete Co., 500 U.S. 614, 621-22 (1991) (internal citations omitted). The Court has been clear that merely private acts, 'no matter how discriminatory or wrongful' do not create a cause of action under section 1983. American Manufacturers Mutual Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (quoting Shelley v. Kraemer, 334 U.S. 1, 13 (1948)).

D. Application

Applying the above standard, this Court finds that the facts alleged by Plaintiff with respect to Defendants Peevey and Milliron do not support the conclusion that they acted under color of state law to deprive Plaintiff of a federal right. First, with respect to the alleged poisoning of Plaintiff's coffee, no allegations are made that the Defendants acted under color of state law. Plaintiff has failed to allege facts that, if proven true, would support the conclusion that Defendants Peevey or Milliron acted with governmental assistance or acquiescence, relied on governmental authority, or were performing a traditional governmental function, when they allegedly added an unknown chemical to Plaintiff's coffee. See Doc. 8 at ¶¶ 15-18. As such, Plaintiff fails to state a claim against these defendants that is cognizable under 42 U.S.C. § 1983, and all claims against them stemming from the alleged poisoning of Plaintiff's coffee should be dismissed.

Second, with respect to the reassignment of the locker, this Court is unconvinced that any violation of Plaintiff's federally protected rights occurred. It is true that it is constitutionally impermissible to impinge on an individual's property interest without due process of law. See, e.g., Higgins v. Beyer, 293 F.3d 683, 693 (3d Cir. 2002). However, it seems highly unlikely that an inmate has any property interest whatsoever in the assignment of a new locker. Be that as it may, to the extent that one could argue that a property interest does exist in the locker, Plaintiff has failed to allege facts that support that Defendant's Peevey or Milliron were the cause of the taking. Indeed, as Plaintiff admits in his complaint, it was former Defendant Wood who had the authority to reassign, and who actually did reassign, the locker to Defendant Peevey. See Doc. No. 8 at ¶¶ 14-15. The fact that Defendant Peevey allegedly gave the locker to Defendant

Milliron at a later time does not create a cause of action under section 1983 because, like the alleged poisoning of Plaintiff's coffee, no facts are alleged that indicate that those defendants acted with governmental assistance or acquiescence, relied on governmental authority, or were performing a traditional governmental function.

Plaintiff, proceeding IFP under 28 U.S.C. §1915, has failed to state a claim under section 1983 against either Defendant Peevey or Defendant Milliron.  As such, the claims against these two defendants should be dismissed, pursuant to 28 U.S.C. §1915(e)(2)(B).  Additionally, upon examination of the complaint, it is apparent that no amount of opportunity for Plaintiff to amend his pleadings would elicit the allegation of facts necessary to state a claim against Defendants Peevey and Milliron.  Thus, it would be futile to grant Plaintiff leave to amend his complaint.

Finally, the dismissal of the complaint with respect to Defendant Peevey, without leave to amend, would render moot that defendant's motion for summary judgment.  Doc. No. 73.  For that reason, Defendant Peevey's motion for summary judgment should be denied.

### III.   CONCLUSION

For the reasons stated above, it is respectfully recommended that Plaintiff's claims against Defendants Peevey and Milliron be dismissed *sua sponte*.  It is further recommended that Defendant Peevey's motion for summary judgment, Doc. No. 73, be denied as moot.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.  Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto.  Failure to file

timely objections may constitute a waiver of any appellate rights.

Dated: October 9, 2009   By the Court:

                                                    LISA PUPO LENIHAN
                                                    United States Magistrate Judge

cc:    Ronald L. Bricker
       FQ-9611
       SCI-Houtzdale
       P.O. Box 1000
       Houtzdale, PA 16698-1000

       Randall Peevey
       GF-5136
       SCI-Mercer
       801 Butler Pike
       Mercer, PA 16137

       Thomas Milliron
       FR-4556
       SCI Mercer
       801 Butler Pike
       Mercer, PA 16137

       counsel of record