IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD L. BRICKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CAPT. GEORGE A. KUZILLA, ) | |
| Pennsylvania State Police Troop D; JOHN ) | |
| S. SHAFFER, Executive Deputy Secretary; ) | |
| JUDITH VIGLIONE, Director; DR. ) | |
| JEFFREY A. BEARD, Secretary; ) | Civil Action No. 08-1053 |
| WILLIAM D. SPRENKLE, Executive ) | |
| Secretary; JAMES BARNACLE, Director; ) | Judge David S. Cercone |
| DAVID S. NOVITSKY, Deputy Director; ) | Magistrate Judge Lisa Pupo Lenihan |
| MICHAEL W. HORLOW, Superintendent; ) | |
| DEPUTY MAHLEMISTER; CAPT. ) | |
| RUSSELL WILSON, Security; LT. ) | |
| GIDDINGS, Officer; CO. EXLEY, Guard; ) | |
| CO. WALMSLEY, Guard; CO. WOOD, ) | |
| Guard; Mr. APPLEGARTH, CCII; ) | |
| WILLIAM (BILL) WOODS, Unit Manager; ) | |
| SGT. WALKER, Official; RANDALL ) | |
| PEEVEY, Inmate; THOMAS MILLIRON, ) | |
| Inmate; THOMAS W. CORBETT, JR., ) | |
| Attorney General; and ALL JOHN AND ) | |
| JANE DOE'S, ) | |
| ) | |
| Defendants. ) | |

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that Defendants' Motion to Dismiss (doc. no. 103) be granted.

**II.   REPORT**

Plaintiff, Ronald Bricker, a state inmate previously confined at the State Correctional

-1-

Institution at Mercer, Pennsylvania, commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 against George A. Kuzilla, Captain of the Pennsylvania State Police and various officers and employees of the Pennsylvania Department of Corrections (DOC). Plaintiff alleges various violations of his rights under the United States Constitution stemming from a conflict over a locker that took place on or about February 28, 2008, while he was incarcerated at SCI-Mercer. The remaining Defendants have moved for dismissal alleging that Plaintiff has failed to state a cause of action against Defendant Kuzilla and that Plaintiff failed to comply with the DOC three-step grievance process available to Pennsylvania state prisoners. For the reasons that follow, the Motion should be granted.

**A. Standard of Review**

The remaining Defendants have filed a Motion to Dismiss Plaintiff's remaining claims in his original and amended complaints (doc. no. 103). A complaint must be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478

U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. Additionally, "a civil rights claim 'must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." ' Coronado v. Goord, Civ. No. 99-1674, 2000 WL 1372834, at *2 (S.D.N.Y. Sept. 25, 2000) (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987)). *See also* Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein). *Accord* Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id*. (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972).

## B. Plaintiff's Allegations

In his original Complaint (doc. no. 8), Plaintiff's recitation of facts is as follows. On or about February 28, 2008, a new locker became available on Plaintiff's cellblock. Plaintiff asked the Corrections Officer on duty, Defendant Wood, if he could have the new locker. Defendant Wood granted Plaintiff's request. After Plaintiff and another inmate placed the locker inside Plaintiff's "cubit," inmate Peevey convinced Defendant Wood that the locker was actually meant for him. Peevey, with Defendant Wood's consent, then took possession of the locker. Peevey later gave the disputed locker to inmate Milliron. After Defendant Milliron, who was working at the time of the incident, returned to the cellblock, he was informed of the situation involving the locker by Peevey. Milliron then confronted Plaintiff, threatening him and warning him not to remove things from Milliron's "cubit".

A day later, on February 29, 2008, at about 9:30 pm, Plaintiff was drinking a cup of coffee that "tasted bad," and made him ill for a week. The following morning, Plaintiff was informed by "inmate Ford" that Peevey had put a chemical in Plaintiff's coffee, and that Milliron was involved with the commission of that act as well. Plaintiff states in his complaint that, on March 1, 2008, at around 9:30 am, he informed the Corrections Officer on duty, Defendant Exley, of the chemical in his coffee, and that Defendant Exley began an investigation. The following day, March 2, 2008, Peevey was removed from Plaintiff's cellblock, but Milliron was allowed to remain. Plaintiff alleges that Milliron was allowed to stay in order to cause him "more trouble."

Plaintiff filed a criminal complaint with respect to the incident, which was turned over to Defendant Kuzilla, who is a Captain in the Pennsylvania State Police. Plaintiff accuses Defendant Kuzilla of unlawfully turning his investigation over to the DOC "Office of Professional

Responsibility" and, in the process, of violating Plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution.

In his Amended Complaint (doc. no. 29), Plaintiff added four additional defendants, Zetwo, Ruffo, Ayers and Cole, claiming that they placed him in solitary confinement in retaliation for the filing of his original complaint in this case. He further claims violations of his rights as protected by the Eighth and Fourteenth Amendments with respect to his confinement in administrative custody.

### C. Defendant Kuzilla

Plaintiff's sole claim against Defendant Kuzilla, a captain in the Pennsylvania State Police, is that Kuzilla failed to investigate an alleged crime against Plaintiff. In this regard, on March 2, 2008, Plaintiff made a private criminal complaint to the Office of the District Attorney of Mercer County in which he claimed that his coffee had been spiked with cleaning chemicals by inmate Randall Peevey (doc. no. 104-2, pp.2- 3). On March 5, 2008, the Mercer County District Attorney faxed the complaint to Lt. Snyder of the State Police (doc. no. 104-2, p. 5). On March 13, 2008, Defendant Kuzilla wrote to Plaintiff informing him that an Office of Professional Responsibility (OPR) was established to review such matters and that the matter was being forwarded for their review (doc. no. 104-2, pp. 7-8). On March 31, 2008, David Novitsky, Deputy Director of OPR, wrote to Bricker asking him to provide specific information regarding the alleged incident (doc. no. 104-2, p. 10). Plaintiff wrote to Novitsky on April 13, 2008 with the requested information (doc. no. 104-2, pp. 12-13). Novitsky subsequently forwarded that correspondence to Superintendent Harlow (doc. no. 104-2, p. 15).

Plaintiff can not state a cause of action against Kuzilla based on these allegations

because a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another. Specifically, Plaintiff has no standing to protest Kuzilla's actions. In this regard, Article III of the United States Constitution restricts the jurisdiction of the federal courts to actual cases and controversies. The case or controversy requirement has been effectuated by several doctrines, the most important of which is standing. Allen v. Wright, 468 U.S. 737, 750 (1984). To establish constitutional standing the plaintiff must show that it has suffered an "injury in fact" that is: concrete and particularized and actual or imminent; fairly traceable to the challenged action of the defendant; and likely to be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). The Supreme Court has held that "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution" because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Linda R.S. v. Richard D. and Texas, et.al, 410 U.S. 614, 619 (1973). *Accord* Town of Castle Rock, Colorado v. Gonzales, 545 U.S. 748, 767 n. 13 (2005); Diamond v. Charles, 476 U.S. 54, 64 (1986); Heckler v. Chaney, 470 U.S. 821, 847 (1985). As such, Plaintiff can not state a claim upon which relief may be granted against Defendant Kuzilla.

### D. Failure to Exhaust Administrative Remedies

The remaining Defendants' basis for dismissal of the Amended Complaint is Plaintiff's alleged failure to have exhausted available administrative remedies as required by the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996). In this regard, in the PLRA, Congress amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e, concerning suits by prisoners. Before the amendments, prisoners challenging the conditions of their confinement under 42 U.S.C. § 1983 were not required to exhaust administrative remedies

before filing suit. The PLRA amended section 1997e(a), as follows, making exhaustion a mandatory requirement.

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), as amended.

The United States Court of Appeals for the Third Circuit analyzed the applicability of the exhaustion requirement in 42 U.S.C. § 1997e in <u>Nyhuis v. Reno</u>, 204 F.3d 65 (3d Cir. 2000) (Bivens action brought by a federal inmate) and <u>Booth v. Churner</u>, 206 F.3d 289 (3d Cir. 2000) (civil rights action brought by a state prisoner). In each of these cases, the Court of Appeals announced a bright line rule that inmate-plaintiffs must exhaust all available administrative remedies before they can file an action in federal court concerning prison conditions. In so holding, the court specifically rejected the notion that there is ever a futility exception to section 1997e(a)'s mandatory exhaustion requirement. <u>Booth</u>, 206 F.3d at 300; <u>Nyhuis</u>, 204 F.3d at 66. A unanimous Supreme Court affirmed the Court of Appeals' holding in <u>Booth v. Churner</u>, 532 U.S. 731 (2001) where the Court confirmed that in the PLRA Congress mandated complete exhaustion of administrative remedies, regardless of the relief offered through those administrative procedures. In addition, in <u>Porter v. Nussle</u>, 534 U.S. 516 (2002), the Supreme Court clarified that the PLRA's exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or specific episodes and whether they allege excessive force or other conduct.

The available administrative remedies for Pennsylvania inmates are codified in the

Pennsylvania Department of Corrections Policy Statement No. DC-ADM 804-1, entitled "Consolidated Inmate Grievance Review System." *See, e.g.* Mitchell v. Horn, 318 F.3d 523 (2003) (discussing DOC Grievance System).  The purpose of the grievance system is to ensure that "every individual committed to [DOC] custody shall have access to a formal procedure through which the resolution of problems or other issues of concern arising during the course of confinement may be sought.  For every such issue, there shall be a forum for review and two avenues of appeal.  The formal procedure shall be known as the Inmate Grievance System."  DC-ADM 804 ¶ V.  The DOC grievance system applies to all state correctional institutions and provides three levels of review: 1) initial review by the facility grievance coordinator; 2) appeal of initial review to the superintendent or regional director; and 3) final appeal to the chief hearing examiner.

The administrative policy further provides that, prior to utilizing the grievance system, prisoners are required to attempt to resolve problems on an informal basis through direct contact or by sending an inmate request slip to the appropriate staff member.  DC-ADM 804 ¶ V.  Inmate grievances must be in writing and in the format provided on the forms supplied by the institution.  DC-ADM 804 ¶ (VI)(A)(1)(f).  An initial grievance must be submitted by the inmate to the Facility Grievance Coordinator within fifteen (15) working days after the event upon which the claim is based.  DC-ADM 804 ¶ (VI)(A)(1)(h).  Specific procedures for the appeal by an inmate of an unsatisfactory decision on a grievance are also provided.

In the instant action, Defendants assert that Plaintiff failed to have exhausted his administrative remedies in that he failed to have completed the three-step grievance process provided for in DC-ADM 804.  In this regard, Defendants assert that Plaintiff did not complete the three-step process because, while he was confined at SCI-Mercer, Plaintiff filed only one grievance

to Final Review: number MER-123974-05, which is unrelated to the instant case. The one grievance related to his claims, Grievance No. MER-228825-08, was received on May 12, 2008 and denied on the same date by Captain Wilson in his Initial Review Response. Plaintiff did not take any further action with respect to that grievance, that is, it was not appealed to the Superintendent or to the Secretary's Office. In his Response to Defendants' Motion, Plaintiff does not deny that he did not appeal this grievance; he merely makes bald unsupported statements that he is not required to exhaust his claims.

The Court of Appeals for the Third Circuit has held that a prisoner's failure to comply with the procedural and substantive requirements of DOC's grievance policy, as set forth in DC ADM 804, results in procedural default, thereby precluding an action in federal court. *See* Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). In so holding, the Court of Appeals specifically held that failing to specifically name accused individuals in a grievance amounted to procedural default because the regulations so required.[1] The United States Supreme Court adopted a similar holding in Woodford v. Ngo, 548 U.S. 81 (2006) wherein it held that an untimely or otherwise procedurally defective administrative grievance or appeal does not satisfy the PLRA's mandatory exhaustion requirement.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all

---

[1]. The relevant regulations provide as follows: "The inmate shall include a statement of the facts relevant to the claim. The inmate should identify any persons who may have information that could be helpful in resolving the grievance. The inmate should also include information on attempts to resolve the matter informally. DC-ADM 804, Part VI.A.1.d.

>steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." This Court has described the doctrine as follows: "[A]s a general rule ⋯ courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

Woodford, 548 U.S. at 90-91 (internal citations, quotations and footnotes omitted).

The Court further noted that "[c]onstruing § 1997e(a) to require proper exhaustion also fits with the general scheme of the PLRA, whereas respondent's interpretation would turn that provision into a largely useless appendage. The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodard, 548 U.S. at 93. The Court concluded that the benefits of exhaustion could only be realized if the prison grievance system is given a fair opportunity to consider the claims, which required the grievant to comply with the procedural rules. *Id*. at 94.

In the case at bar, Plaintiff procedurally defaulted all of his claims in two major respects. First, by failing to appeal Grievance No. MER-228825-08 to the second and third levels of review. Second, Plaintiff procedurally defaulted all of the claims not identified in Grievance No. MER-228825-08 by failing to grieve those claims within the mandatory fifteen day period.

As to the first procedural default, the Court of Appeals for the Third Circuit specifically has held that the failure to submit the required documentation for final review constitutes procedural default and results in dismissal of the Complaint. *See* Eakle v. Palakovich, 200 Fed. Appx. 155, 156, 2006 WL 2917531, *1 (3d Cir. 2006). As to the second procedural

default, the Court of Appeals for the Third Circuit specifically has held that failing to specifically name relevant facts and accused individuals in a grievance amounted to procedural default because the regulations so required.[2] *See* Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Given that Plaintiff has clearly failed to do so, and that he is now time-barred from rectifying his mistake, it appears to this Court that Plaintiff, as a matter of law, cannot prevail in his suit against the remaining DOC Defendants. Furthermore, any opportunity afforded to Plaintiff to amend his complaint would be futile.

In the absence of any controlling authority to the contrary, this Court is required to follow the directives of the Court of Appeals for the Third Circuit and grant Defendants' Motion to Dismiss due to Plaintiff's failure to have properly exhausted his available administrative remedies.

### III. CONCLUSION

For the reasons stated above it is respectfully recommended that Defendants' Motion to Dismiss be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have ten (14) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

---

[2]. The relevant regulations provide as follows: "The inmate shall include a statement of the facts relevant to the claim. The inmate should identify any persons who may have information that could be helpful in resolving the grievance. The inmate should also include information on attempts to resolve the matter informally. DC-ADM 804, Part VI.A.1.d.

Dated:  April 8, 2010

By the Court:

_____
LISA PUPO LENIHAN
United States Magistrate Judge

Ronald L. Bricker
FQ-9611
FCI Houtzdale
P.O. Box 1000
Houtzdale, PA 16698-1000